J-S38018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANDREW L. LITTLE | : | |
| | : | |
| Appellant | : | No. 2061 MDA 2019 |

Appeal from the PCRA Order Entered November 26, 2019
In the Court of Common Pleas of Fulton County Criminal Division at
No(s):  CP-29-CR-0000055-2015

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:      **FILED: NOVEMBER 6, 2020**

Andrew Little appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. § 9541-9546. Little claims that his trial counsel was ineffective for failing to move to strike a juror and that the PCRA court erred in denying his after-discovered evidence claim. We affirm.

Little was convicted of Aggravated Assault and Simple Assault[1] as a result of an altercation that took place in March 2015 outside of a bar where Little and co-defendant Shawn Goshorn attacked Vincent Jay ("Victim"). Goshorn testified at trial[2] as a Commonwealth witness, and described the assault. Goshorn said that Little beat Victim into unconsciousness and

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and 2701(a)(1), respectively.

[2] The certified record contains transcripts for the trial, sentencing, and PCRA hearing, but does not contain a transcript of the *voir dire* proceeding.

continued to beat him while he remained unconscious. N.T., 9/9/15, at 83-85. The attack resulted in injuries to Victim that required months of rehabilitation. *Id.* at 126-130.

A jury found Little guilty as above, and the court sentenced him to ten to 20 years' incarceration. Little filed a timely appeal and this Court affirmed. The Pennsylvania Supreme Court denied Little's petition for allowance of appeal on May 10, 2017.

On March 5, 2018, Little filed a timely, *pro se* PCRA petition. The court appointed counsel, who filed an amended petition and a supplemental petition. Little claimed, among other things, that trial counsel was ineffective for failing to strike Anthony D'Anna ("Juror") from the jury and that a recent conversation between Goshorn and Little's brother, Ryan Little ("Ryan"), constituted after-discovered exculpatory evidence.

The PCRA court held an evidentiary hearing on July 26, 2019, at which the court received testimony from Little, Little's trial counsel, and Ryan. Little testified that counsel should have struck Juror because Little had been involved in an altercation with Juror's son approximately 11 years before, in 2008. N.T., 7/26/19, at 19. Little said that Juror's son beat Little, resulting in injuries requiring medical attention. *Id.* Little did not press charges against Juror's son and stated that they had been civil ever since. *Id.* at 20-21. Little explained that he told trial counsel his concerns and counsel stated that there "wasn't an issue. It was too long ago." *Id.* at 21-22.

Counsel testified that Little "mention[ed] that he had an altercation with . . . [Juror's] son," but he did not "recall a specific request to strike him." *Id.* at 32. Counsel testified that if Little had asked him to strike Juror, counsel would have insisted that the court strike Juror from the jury. *Id.* at 32-33. Counsel also explained he did not want to strike Juror because he knew that Juror's son had been in "a lot of trouble" and he believed Juror would take the "innocent until proven guilty" and "proof beyond a reasonable doubt" instructions "very seriously:"

> He actually was probably the only juror that I actually knew personally. I had [met] him. I mean, we were not buddies but we had a discussion because when his son . . . was in some trouble, I was helping out with that case.
>
> I had spoken to him and I knew him through another project that we had done here in the County. I knew him to be a fair and honest person. That was my impression of him. I felt because his son had been in a lot of trouble, that he would take the instructions of [innocent until proven guilty] very seriously, proof beyond a reasonable doubt, very seriously.
>
> I felt he would be an excellent juror and I was kind of surprised that [the Commonwealth] did not strike him.

*Id.* at 33.

Ryan testified about a conversation he had with Goshorn after the trial. *Id.* at 6. Ryan said that he saw Goshorn at a party and Goshorn approached him to talk, and the two got into an argument. *Id.* at 7-8. Ryan testified that he stressed to Goshorn that Little "was facing quite a few years in prison because the truth wasn't told in the courtroom on his behalf." *Id.* at 8. According to Ryan, Goshorn responded by saying he "came to court and said

what he was told to say," without further elaboration. **Id.** Goshorn did not testify.

Following the evidentiary hearing, the PCRA court denied Little's petition. This appeal followed. Little raises two issues on appeal:

> 1. Trial counsel was ineffective for failing to request the removal of [Juror] whose son had a physical altercation with [Little] and had a natural bias, and due to the ineffective assistance of counsel, the PCRA court's decision to dismiss [Little's] PCRA Petition was an abuse of discretion.
>
> 2. It was an abuse of discretion to dismiss [Little's] PCRA Petition where the statements that the victim made to the [Little's] brother, Ryan Little, constituted newly discovered evidence that may have resulted in a different verdict.

Little's Br. at 6, 11.

The standard of review in PCRA appeals "is limited to determining whether the findings of the PCRA court are supported by the record and free from legal error." **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009) (citing **Commonwealth v. Sneed**, 899 A.2d 1067, 1071 n.6 (Pa. 2006)).

Little first claims that counsel was ineffective for failing to move to strike Juror from the panel. Little notes that he and Juror's son had previously been in an altercation, and that Juror knew of the altercation. Little states he advised counsel, but counsel did not move to strike Juror, and did not question Juror about it. Little claims the failure to question Juror about any bias he may have had was unreasonable.

- 4 -

Counsel is presumed to have been effective, and the petitioner bears the burden to prove ineffectiveness. To carry that burden, the petitioner must show that: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). A failure to satisfy any one prong of the test will result in denial of the petitioner's claim. **Strickland v. Washington**, 466 U.S. 668, 700 (1984).

"With regard to the . . . reasonable basis prong, 'we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis.'" **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011) (**Commonwealth v. Washington**, 927 A.2d 586, 594 (Pa. 2007)). A court will find "that counsel's chosen strategy lacked a reasonable basis only if [the petitioner] proves that 'an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" **Id.** (quoting **Commonwealth v. Williams**, 899 A.2d 1060, 1064 (Pa. 2006)).

The PCRA court found that Little's claim that his counsel was ineffective for failing to strike Juror failed because trial counsel had a reasonable basis for not doing so. Trial Ct. Op. at 7-9. This was not error and the record supports the court's determination. Counsel testified that he believed that Juror would make a good juror based on his knowledge of Juror, noting that

he believed Juror would take seriously the court's instructions on the burden of proof.

Little's further claim that counsel was ineffective for not questioning Juror about alleged bias is baseless. Little has not identified anything that counsel would have learned from such questions that would have rendered counsel's decision not to strike Juror unreasonable. We therefore cannot say that Little sustained prejudice.

In his second claim, Little argues that his after-discovered evidence claim was meritorious. He argues that Ryan's testimony establishes that, after trial, Goshorn told Ryan that he "said what he was told to say," and that this constitutes after-discovered evidence under the PCRA. He notes Little learned of the information after trial, and argues the evidence was not corroborative or cumulative, and that it would not be used solely to impeach, because it goes to whether Goshorn was coerced or unduly influenced. Little further claims the evidence would have resulted in a different outcome, as Victim and Goshorn were the only witnesses to the fight. He states, "Given the inconsistencies in both witnesses' previous statements with their testimony at trial, along with [Goshorn's] motivation to help himself out, the newly discovered evidence would likely result in a different verdict." Little's Br. at 13. He claims Ryan's testimony is not hearsay, because it would not be offered to prove the truth of the matter asserted. Rather, it would be admitted to impeach a prior witness.

For a petitioner to obtain PCRA relief based on after-discovered evidence the petitioner must "demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." **Commonwealth v. Small**, 189 A.3d 961, 969 (Pa. 2018).

The PCRA court found that Goshorn's statement to Ryan did not constitute after-discovered exculpatory evidence. The court focused mainly on the fourth prong and ruled that the after-discovered evidence here was not of a nature and character that would likely result in a different verdict if a new trial were granted. Trial Ct. Op. at 11.

The PCRA court noted that recantations are not a reliable form of proof. **Id.** at 16. The court further explained that "[e]ven if believed, the mere statement that . . . Goshorn 'came to court and said what he was told to say,' is not sufficiently exculpatory." **Id.** It noted that "[Ryan] conceded . . . Goshorn never said he lied while testifying at [Little's] trial, nor did he confess to independently committing the crimes of which [Little] was convicted or actually exculpate [Little] in any meaningful way." **Id.** The PCRA court also noted that Goshorn did not testify at the PCRA hearing or officially recant his testimony. **Id.** The court found that "a jury [was] unlikely to find [Ryan's] story credible, let alone compelling enough to render a different verdict," noting that "[a]s [Little's] brother, [Ryan] has an obvious bias in [Little's]

favor." *Id.* at 16-17. The court also noted that the jury knew that Goshorn hoped to help himself by testifying against Little. *Id.* at 17. Finally, the court found Ryan's testimony would be inadmissible hearsay, concluding it was offered to prove the truth of the matter asserted and no exception applied. *Id.* The court found Ryan's testimony not credible, and concluded "[t]he evidence against [Little] at trial, on the other hand, was weighty and clearly sufficient to support a conviction." *Id.* at 19.

The PCRA court did not err in finding that Little failed to establish an after-discovered evidence claim. Little failed to prove that Goshorn's statement would have provided exculpatory evidence that would likely result in a different verdict if a new trial were granted.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/06/2020