J-A07027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZEPHANIAH STOREY | : | |
| | : | |
| Appellant | : | No. 1144 EDA 2021 |

Appeal from the PCRA Order Entered May 10, 2021
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000342-2014

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 6, 2022**

Zebhaniah Storey appeals from the order denying his petition filed under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. Storey raises claims that his trial counsel was ineffective. We affirm.

We previously summarized the factual history of the case as follows:

> Nicholas Possinger testified that Donald J. O'Reilly, a recovering heroin addict, called him asking Possinger to obtain heroin for him. Possinger testified that he then telephoned Storey, his usual dealer, to secure the heroin. Possinger and Storey made arrangements to meet at the Mount Airy Casino parking lot on February 10, 2013, for the exchange. Possinger took O'Reilly's money and approached Storey's vehicle to purchase the heroin. Possinger was the only one who met with or saw Storey during the drug deal. Possinger bought ten bags of heroin, which he gave to O'Reilly. O'Reilly gave Possinger two bags as compensation for setting up the drug deal. O'Reilly contacted Possinger again on February 13, 2013, to have him set up another drug deal, again offering him two bags of heroin as compensation. This deal occurred at the intersection of Abeel Road and Fish Hill Road. As in the previous deal,

Possinger was the only person who saw or dealt with Storey. This time, Possinger purchased six bags of heroin, which were stamped with the initials A.O.N. Possinger testified that he recognized this stamp from heroin he had used in the past, and warned O'Reilly to be careful when taking his four bags, as this heroin was stronger than that purchased on February 10, 2013, and O'Reilly was just starting to use heroin again.

On February 14, 2013, at approximately 1:45 a.m., Officer Christopher Staples of the Pocono Township Police Department responded to a call regarding an unresponsive male with a possible drug overdose. Officer Staples testified that he found O'Reilly in his bedroom in the early stages of rigor mortis. Officer Staples observed drug paraphernalia around O'Reilly's room, including a lighter, a spoon, hypodermic needles, a measuring cup, and a belt. Deputy Coroner Teri Rovito subsequently pronounced O'Reilly dead. In O'Reilly's pockets, she discovered four empty wax paper bags stamped with the letters A.O.N. The toxicology report indicated that there were fatal levels of morphine in O'Reilly's blood.

Police obtained a search warrant for the cell phone records of Storey, Possinger, and O'Reilly in an attempt to determine their general location during the two drug transactions. The records indicated that Possinger's cell phone was utilizing towers in the general vicinity of the Mount Airy Casino on February 10, 2013, and that Storey was within the vicinity of the second transaction on February 13, 2013.

*Commonwealth v. Storey*, 167 A.3d 750, 755 (Pa.Super. 2017).

To the above, we will add additional testimony, relevant to the ineffectiveness claims raised in Storey's PCRA petition. First, during Possinger's testimony, the Commonwealth asked if Storey had "a lot of customers," and Possinger replied, "From what I could tell." N.T., Sept. 9, 2015, at 29. Trial counsel objected, and the court sustained the objection. *Id.* Trial counsel did not request a cautionary instruction regarding the testimony.

- 2 -

Next, during Officer Staples' testimony, the Commonwealth asked about whether there were incoming or outgoing calls from the phone believed to belong to Storey to the residence of Storey's parents. *Id.* at 128-29. Trial counsel objected that there had been no foundation, as there was no testimony regarding Storey's parents' residence. *Id.* The court required the Commonwealth to lay a foundation, and Officer Staples testified he was familiar with Storey's parents and had contact information for them. He also noted that when the police receive a call, general information is kept in a database. *Id.* at 130-31. Trial counsel again objected, and the court gave a curative instruction:

> So members of the jury, there was just testimony of this witness that he knows . . . [Storey's] parents' phone number or contact information, all right. That's the evidence in the case. You're not to speculate, in any manner whatsoever, as to how or why that information is available to this particular witness.

*Id.* at 133.

The Commonwealth also presented the testimony of O'Reilly's mother. She testified about the events of the night that O'Reilly died. She also testified about her relationship with her son and that he was a great son, had a lot of friends, and was missed. N.T., Sept. 8, 2015, 71-72, 85-86.

In September 2015, a jury convicted Storey of drug delivery resulting in death, two counts of possession with intent to deliver a controlled substance ("PWID"), two counts of possession of drug paraphernalia, and two counts of

possession of a controlled substance.[1] The trial court sentenced Storey to 108 to 276 months' imprisonment. Storey appealed, and this court affirmed the judgment of sentence in July 2017.

In July 2018, Storey filed a PCRA petition and obtained reinstatement of his right to file a petition for allowance of appeal. Storey filed the petition, which the Pennsylvania Supreme Court denied in September 2019.

In May 2020, Storey filed the instant *pro se* PCRA petition. Storey retained counsel, who filed an amended petition, alleging ineffectiveness claims, including that trial counsel was ineffective for not requesting a cautionary instruction regarding testimony that Storey "had a lot of customers" and for objecting to Officer Staples' testimony. He also claimed ineffectiveness for failing to object to O'Reilly's mother's testimony regarding her son's character and that he was missed, and for not challenging a juror who allegedly knew Storey from a prior arrest. The court held a hearing at which trial counsel and Storey testified.[2]

Trial counsel testified that he remembered Possinger testifying that Storey had "a lot of customers" and that he had objected to the testimony. N.T., Nov. 20, 2020, at 13. He said he did not request a curative instruction

---

[1] 18 Pa.C.S.A. § 2506(a), and 35 P.S. §§ 780-113(a)(30), (a)(32), and (a)(16), respectively.

[2] An employee of the Monroe County Probation Department also testified regarding Storey's credit for time served. Her testimony is not relevant to the issues raised on appeal.

because doing so often cements the objectionable testimony in the minds of the jurors:

> The curative instruction nine times out of ten, and this is one of those times in my opinion, only cements the thought in the mind of the jurors.
>
> That is, if the jury hears that it's not supposed to pay attention to that then suddenly if some of the jurors weren't entirely paying attention when the statement was made they would then know that the statement was made and given the circumstances I was pretty certain that the jury would accept that statement as true.
>
> So I opted to simply stop and make certain that -- do the best I could to make certain that Mr. Possinger would not make further statements of that nature and then let it go at that.

*Id.* at 14.

Trial counsel also discussed Officer Staples' testimony. He stated he recalled that during Officer Staples' testimony, the officer mentioned a phone number, and counsel "just automatically objected to the number and frankly . . . that was a mistake because the Commonwealth was permitted to supply information to the jury to the effect that the number had come up as being registered or in some way connected with [Storey] during the course of the investigation." *Id.* at 15-16. He said he believed the court limited "that testimony in a reasonable fashion but it is true that it did open the door." *Id.* at 17. He stated the objection had not been planned but occurred "because of the way in which the testimony was presented." *Id.* at 17-18. Counsel stated that he was aware the Commonwealth was going to use the number to attempt to connect Storey to the delivery and to locate Storey, and the

objection "was to the number because it was pulled out the air so to speak." *Id.* at 31.

Trial counsel also recalled the testimony of O'Reilly's mother about the decedent's character and how he was missed by his family and friends. He stated his decision not to object "was a matter of strategy." *Id.* at 18. He testified that the defense was based on claims that the statute is unconstitutional, that Storey did not provide the drugs to Possinger, and that, if Storey did provide drugs to Possinger, those were not the drugs provided to O'Reilly. *Id.* at 19. He noted those defenses were based on challenging Possinger's testimony. *Id.* at 19-20.

Trial counsel explained that he did not object because he did not "want the jury to think that [Storey] was callous about and somehow didn't care about the fact that another human being was dead[.]" *Id.* at 20. He elaborated, "[M]y feeling at the time was that if [counsel] interrupted [O'Reilly's mother] when she was reasonably stating the fact that she missed her son . . . that the jury would hold that against [Storey]." *Id.* Counsel further testified that in closing he was going "to express the fact it was unfortunate that [O'Reilly] had in fact died," and "if [he] had earlier challenged his mother when she was expressing the loss . . . the jury might have thought that [he] was being" callous or disingenuous. *Id.*

Counsel conceded that he "pretty much knew what [O'Reilly's mother] was going to say," and did not challenge her testimony prior to trial. *Id.* at 21. He testified that "when you're dealing with death cases generally you

expect a certain amount of emotional testimony from family members and it's very very difficult to preclude family members from testifying because ordinarily they have some connection with the alleged crime so that their testimony is to a certain extent relevant." *Id.* at 31.

The parties filed post-hearing briefs. The court then denied the petition. Storey filed a timely notice of appeal.

Storey raises the following issues:

> A. Whether PCRA court erred and abused its discretion by failing to find that trial counsel was ineffective during trial for failing to seek a corrective instruction regarding testimony from Nicholas Possinger to the extent that Storey, "Had a lot of customers."
>
> B. Whether the trial court erred and abused its discretion by failing to find that trial counsel was ineffective during trial for allowing emotional testimony from the mother of the decedent about how much she missed him and how much pain she was in from losing him without [sic]?
>
> C. Whether the PCRA court erred and abused its discretion by failing to find that trial counsel was ineffective during trial for allowing a courthouse employee who knew of [Storey] to serve on the jury?

Storey's Br. at 5-6 (capitalization regularized).

In his issues, Storey claims the PCRA court erred in denying his claims that trial counsel was ineffective.

When reviewing the denial of a PCRA petition, we "determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." ***Commonwealth v. Small***, 238 A.3d 1267, 1280 (Pa. 2020). Our standard of review of the PCRA court's legal

conclusions is *de novo*, while our "scope of review is limited to the findings of the PCRA court and the evidence of record[.]" ***Id.***

To establish a claim that trial counsel was ineffective, a petitioner must plead and prove three things: "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate [the petitioner's] interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). An ineffectiveness claim will only be successful where the petitioner satisfies each prong. ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009). For the reasonable basis prong, courts "do not question whether there were other more logical courses of action which counsel could have pursued; rather, [courts] must examine whether counsel's decisions had any reasonable basis." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011) (quoting ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007)).

Counsel's chosen strategy lacks a reasonable basis only if the petitioner proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Id.*** (quoting ***Commonwealth v. Williams***, 899 A.2d 1060, 1064 (Pa. 2006)). To establish the prejudice prong, "the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." ***Id.***

In his first issue, Storey claims that trial counsel's failure to request a cautionary instruction following Possinger's statement in which he agreed that Storey had a lot of customers constituted ineffective assistance of counsel. He also claims that counsel's objection during Officer Staples' testimony about Storey's family's phone number enabled the Commonwealth to ask further questions about why he knew the phone number. Storey contends that the objection thus led "to a reasonable conclusion in [the jurors] minds that Storey was regularly in trouble with the police." Storey's Br. at 13.

Storey claims that the decision to object to Officer Staples' testimony regarding the phone number combined with the failure to request a judicial instruction following Possinger's testimony, "create[d] the strong impression that Storey was [a] well known drug dealer among both drug users and the police," which was "overwhelmingly prejudicial in a case like this one where someone . . . died from ingesting illegal drugs." *Id.* at 15. Storey claims the case against him was "more tenuous than most in that there was no accusation that Storey had ever even met the deceased victim." *Id.* at 16. He claims that "[b]y allowing the jury to think of Storey as a regular drug dealer with an established reputation with both addicts and law enforcement trial counsel furthered the idea that Storey was likely to be guilty based on concepts other than the evidence actually presented in trial." *Id.*

Storey does not mention in his Statement of Questions Presented his claim relating to the objection to Officer Staples' testimony, and this issue is not "fairly suggested" by the questions he explicitly lists. *See* Storey's Br. at

5-6; Pa.R.A.P. 2116(a).[3] He did include the claim in his Rule 1925(b) statement, and the trial court addressed it. However, the Commonwealth did not address it in its brief, likely because it does not appear in Storey's Statement of Questions Presented. Our review is materially hampered, and the issue is therefore waived. It is meritless in any event, as we explain below.

The PCRA court first concluded that trial counsel was not ineffective for failing to request a cautionary instruction following Possinger's testimony. It reasoned counsel "had a reasonable strategic basis" to not request a curative instruction following Possinger's testimony. The court pointed out counsel's testimony that a curative instruction "cements the thought in the mind of the jurors," and if a juror had not been paying attention, they would then know the statement had been made and counsel was "pretty certain that the jury would accept that statement as true." Trial Court Opinion, filed May 10, 2021 ("1925(a) Op.") at 9-10 (citation omitted).

We conclude the record supports the court's findings, and it did not err as a matter of law. Counsel had a reasonable basis for not requesting a curative instruction. This claim therefore fails.

Next, the PCRA court rejected Storey's claim that counsel was ineffective for objecting to the testimony regarding the phone number. The court concluded he failed to establish prejudice. The court noted that on direct appeal, this Court determined that Officer Staples' testimony that there was

---

[3] "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

a call from the phone allegedly belonging to Storey's parents' phone number was relevant to prove Storey was the dealer with whom Possinger met, and noted the court issued a limiting instruction.[4] The PCRA court therefore concluded that Storey "failed to demonstrate that the testimony would not have been presented in the absence of this objection." *Id.* at 11.

The record supports the court's findings and the court did not err in finding Storey failed to prove prejudice. Storey did not establish the evidence would not have been admitted. In addition, he also did not establish that the trial outcome would have been different had counsel not objected.

Both in the PCRA court and on appeal, Storey has attempted to combine these two claims of ineffectiveness, reasoning that together the alleged errors allowed the jury to think Storey was a regular drug dealer. This claim lacks merit. Even if separate allegations of error that are individually meritless could in combination add up to a valid claim of error,[5] Storey failed to establish prejudice, that is, that the outcome of the trial would have been different had

---

[4] On direct appeal, this Court first noted that Storey opened the door to the testimony through the objection, but then concluded the claim lacked merit. *Storey*, 167 A.3d at 759.

[5] The Pennsylvania Supreme Court has "held that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Koehler*, 36 A.3d 121, 161 (Pa. 2012). It has therefore found that where individual claims "are rejected for lack of arguable merit, there is no basis for an accumulation claim." *Id.* It has held, however, that where "the failure of individual claims is grounded in lack of prejudice, . . . then the cumulative prejudice from those individual claims may properly be assessed." *Id.*

counsel made other decisions regarding the testimony. This is so because of the clear testimony that Storey supplied the heroin that led to O'Reilly's death.

In his second issue, Storey claims counsel was ineffective for not filing a motion *in limine* to preclude O'Reilly's mother's testimony, where she spoke about her son's character and how he was missed. He claims the testimony's "sole purpose was to enflame the passions of the jury." Storey's Br. at 17. He asserts that a motion in *limine* would have avoided counsel's concerns that objecting during trial would cause the jury to perceive his client as callous and would have kept the jury from hearing the emotional and prejudicial testimony.

The PCRA court found counsel had a reasonable basis for not filing a motion *in limine* to preclude the testimony. It also concluded that Storey did not prove that such a motion would have had success.[6]

Storey is not entitled to relief. Although victim impact testimony is as a rule only admissible at sentencing, and during the trial itself, Storey has again failed to prove prejudice. **See Commonwealth v. Jordan**, 65 A.3d 318, 333-34 (Pa. 2013) (holding testimony of victim's widow was erroneously admitted during guilt phase of capital trial, but that the error was harmless). "An error is harmless when the Commonwealth can establish that the properly admitted

---

[6] The PCRA court also concluded that counsel had a reasonable basis for not objecting to the testimony, pointing out counsel's testimony that he did not want the jury to think Storey was callous or that he did not care another human had denied and that he did not want to contradict his intended closing, which included that the death was unfortunate. On appeal, Storey does not claim counsel was ineffective for failing to object during the testimony.

and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict." *Id.* at 333 (citation ommitted). In view of Possinger's strong, clear testimony that Storey supplied the heroin that resulted in O'Reilly's death, we cannot say that there is a reasonable probability that the outcome of the proceedings would have been different but for the admission of the testimony.

In his final issue, Storey claims counsel was ineffective for allowing a courthouse employee who knew Storey to serve on the jury. Storey did not raise this claim in his Rule 1925(b) statement, in which he raised only the following issues:

> 1. The PCRA Court erred and abused its discretion by failing to find that trail counsel was ineffective during trial by failing to seek a corrective instruction regarding testimony from Nicholas Possinger to the extent that Storey, "had a lot of customers."
>
> 2. The PCRA Court erred and abused its discretion by failing to find that trail counsel was ineffective during trial by allowing a police officer to testify that he was aware of Storey's phone number prior to the incidents involved with the trial by ether objection or preemptive Motion *in Limine*.
>
> 3. The PCRA Court erred and abused its discretion by failing to find that trail counsel was ineffective during trial by allowing emotional testimony from the mother of the decedent about how much she missed him and how much pain she was in from losing him without either objection or preemptive Motion *in Limine*.

Concise Statement of Matters Complained of on Appeal, filed June 28, 2021, at 1-2. Storey therefore waived his issue claiming counsel was ineffective during *voir dire*. **See** Pa.R.A.P. 1925(b)(4)(vii).[7]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2022

---

[7] Even if Storey had not waived the claim, we would conclude the PCRA court properly denied it. **See** 1925(a) Op. at 15-18 (concluding the record did not support Storey's claim that the juror knew him from a prior arrest, pointing out she only answered that she knew Storey by name, concluding that "[m]any other venirepersons raised issues that can be seen as more emotional or more likely to risk bias," and concluding Storey did not prove by a preponderance of the evidence that counsel lacked a reasonable basis to not strike the juror); N.T., Nov. 20, 2020, at 23-36 (trial counsel testified that "there [were] a number of people that [they] used the peremptories for and it's always a balancing act as to how many peremptories you have and what damage you thought the other people would be" and noted the juror "was on the list but [they] did not have enough peremptories" to strike him or her).